**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| INDIANA MICHIGAN POWER CO. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12-CV-861 |
| v. | ) | Honorable Algenon L. Marbley |
| | ) | Magistrate Judge Mark R. Abel |
| SIEMENS ENERGY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO SIEMENS ENERGY, INC.'S
MOTION TO DISMISS COUNTS I AND II**

Plaintiff Indiana Michigan Power Co. ("I&M"), by and through its attorneys, submits this Memorandum in Opposition to the motion to dismiss Counts I and II brought by Siemens Energy, Inc. ("Siemens") .

**INTRODUCTION**

I&M's Complaint pleads claims upon which relief can be granted for purposes of Fed. R. Civ. P. 12(b)(6), and those claims are fully supported both by the parties' contract (the "Contract"[1]) and applicable law.  As set forth in the Complaint, I&M agreed to pay a "firm fixed price" (the "Firm Fixed Contract Price") in exchange for Siemens equipment.  (Contract, Art. 8 (setting forth the "firm fixed price").)  The Siemens equipment thereafter failed to perform as warranted, resulting in catastrophic damage.  (Compl. ¶¶ 11 & 12.)  Siemens opted to repair the damaged equipment pursuant to its Contract warranty (the "Warranty"), which required Siemens to "at its option and expense correct such nonconformity by repair or replacement."  (*Id.* ¶¶ 11 & 14.)  When Siemens purportedly could not complete the necessary repairs without incurring

---

[1] Contract Number C-11468 and Attachment A and Amendment 4 thereto (referred to herein as the "Contract") are confidential and have been filed under seal pursuant to this Court's Order dated November 19, 2012 (Doc. # 12).

expense in excess of the Firm Fixed Contract Price, it invoked the Contract's "Limitation of Liability" provision and improperly sought to shift the burden of that extra expense onto I&M by refusing to complete necessary repairs unless I&M paid Siemens millions of dollars in excess of the Firm Fixed Contract Price.  (*Id.* ¶¶ 14-15, 17-18.)

According to Siemens, I&M had only two options upon receiving its ultimatum: (a) tell Siemens to abandon the ongoing repairs, in which case I&M would have paid the Firm Fixed Contract Price but would not have received Warranty-conforming equipment in exchange, or (b) pay Siemens millions of dollars in excess of the Contract Price in order to complete repairs and be able to use the equipment that Siemens had warranted and sold for a Firm Fixed Contract Price.  (*Id.*)  Neither option is supported by the Contract.  The Limitation of Liability provision in the Contract does not, and cannot be construed to, limit Siemens' contractual obligation to provide conforming equipment in exchange for the Firm Fixed Contract Price, and to perform any repairs necessary to restore that equipment to conformity at Siemens' own expense.  (*Id.* ¶¶ 11 & 14.)  Counts I and II of the Complaint thus seek relief for breach of contract and breach of warranty based upon Siemens' attempt to charge millions of dollars in excess of the Firm Fixed Contract Price in order to complete the repairs necessary to provide I&M with working equipment.  (*Id.* ¶¶ 19-27.)  But if for some reason the Contract were to be construed to permit Siemens' behavior, then Count II also seeks alternative relief based upon the inescapable conclusion that under such circumstances the Contract Warranty fails of its essential purpose.  (*Id.* ¶ 27.)  Both Counts fully satisfy Rule 12(b)(6), and Siemens' motion should be denied.

## FACTUAL BACKGROUND

The allegations of the Complaint (which must be accepted as true for purposes of Siemens' motion to dismiss) establish that in 2004, I&M decided to purchase new low pressure

turbines for Unit 1 of the Donald C. Cook Nuclear Plant (the "Cook Plant"). (Compl. ¶¶ 9-10.) Effective August 31, 2004, I&M and Siemens entered into Contract C-11468, subsequently numbered 1500196 (the "Contract") for new low pressure turbines and related equipment to be designed, engineered, fabricated, loaded, transported, assembled and installed by Siemens. (*Id.* ¶¶ 1 & 10.)

I&M was careful to ensure that the Contract contained a warranty provision that provided I&M with protections in the event the Siemens equipment failed to perform as required. (*Id.* ¶ 11.) The applicable warranty in the Contract ("Warranty") provides as follows:

> [Siemens] warrants that the Major Equipment furnished to [I&M], including any part of Major Equipment repaired or replaced by [Siemens] during the Major Equipment Warranty Period, will be free of defects in workmanship and materials until ten (10) years from the date of shipment of the original Major Equipment to Owner (the Major Equipment Warranty Period).
>
> If during the Major Equipment Warranty Period [Siemens] is promptly notified in writing that the Major Equipment fails to conform to the Major Equipment Warranty, [Siemens] will *at its option and expense* correct such nonconformity by repair or replacement.

(*Id.* (quoting Contract, Art. 13).)

On September 20, 2008, the Siemens equipment suffered a catastrophic failure when turbine blades broke off their rotor while Unit 1 was at full power and the turbines were rotating at approximately 1800 rpm. (*Id.* ¶ 12.) The failure caused severe vibrations and significant damage to the entire Unit 1 power train, including the high pressure turbine, all three low pressure turbines, the electric generator, and supporting systems. (*Id.*) Unit 1 had to be completely shut down for more than a year. (*Id.*) Ultimately, the entire power train for Unit 1 and other related plant equipment had to be disassembled, inspected, repaired or replaced, and reassembled. (*Id.*)

3

I&M promptly notified Siemens and submitted a claim under the Warranty. (*Id.* ¶ 13.) Siemens thereafter exercised its option under the Warranty to repair the warranted equipment at its own expense. (*Id.*) To allow Siemens to perform the necessary repairs, I&M shipped the damaged equipment from the Cook Plant in Michigan to a Siemens facility in North Carolina. (*Id.* ¶ 14.)

After commencing repairs on the damaged equipment, Siemens contended that the expenses it would incur to repair the damaged equipment would exceed the Contract Price. Based on the following provision of the Contract, Siemens took the position that any repair expenses in excess of the Fixed Contract Price had to be paid by I&M:

> The parties expressly agree that the remedies provided herein are exclusive and that under no circumstances shall the total aggregate liability of either party under any theory of recovery, whether based in contract, in tort (including negligence and strict liability), under warranty, or otherwise, exceed the total price paid to contractor under this agreement.

(*Id.* (quoting Contract, Art. 22 (text capitalized in original)).)

Knowing full well that I&M could not resume its interrupted business until the warranted equipment was repaired and reinstalled, Siemens refused to complete the repairs unless I&M agreed to pay for all Warranty repair expenses purportedly in excess of the Fixed Contract Price. (*Id.* ¶ 15.) In other words, Siemens took the position that it did not have to complete the repairs of the warranted equipment at its own expense, even though it had elected to do so, and that it could cease work midstream without ever returning the equipment to working condition, thereby defeating the essential purpose of the warranty and effectively leaving I&M with no remedy at all.[2] (*Id.*)

---

[2] Moreover, in calculating the amount of its purported expenses for purposes of determining whether it had incurred expenses in excess of the Contract Price, Siemens improperly included charges for profit, "overhead," and other items not related to the actual cost of the warranty repair. (Compl. ¶ 16.)

Siemens' ultimatum was purposefully calculated to exert maximum economic pressure upon I&M. (*Id.* ¶ 17.) As Siemens well knew, I&M urgently needed the repairs completed to get Unit 1 back into full operation. (*Id.*) Although Siemens' position required I&M to pay more than the Fixed Contract Price in order to obtain the equipment Siemens had originally contracted to provide for the Contract Price, Siemens nevertheless determined to take advantage of the position of distress into which it had placed I&M by its failure to provide equipment conforming to the Warranty. (*Id.*)

I&M paid the amounts that Siemens demanded under an express reservation of rights incorporated into the Contract through an amendment. (*Id.* ¶ 18; *see also* Contract, Amend. 4, Art. 1 ("The parties reserve their rights under the Contract to contest which work is covered by the warranty and how the costs and/or price is calculated for determining when the limitation of liability is reached.") & Amend. 4, Art. 7 ("Nothing herein or done by either party hereunder or in connection herewith shall be deemed or construed as an admission of liability by either party nor shall anything herein be deemed to establish any course of dealing between the parties, or precedent under or interpretation of any provision or provisions of the Contract.").)

## **PROCEDURAL BACKGROUND**

Siemens moves to dismiss Counts I and II of the Complaint. Count I claims breach of contract based on allegations that Siemens violated the Contract by demanding additional payments before it would complete repairs that it had contractually committed to do at its own expense. (Compl. ¶¶ 11-15, 19-23.) Count II claims breach of warranty based on Siemens' refusal to complete contractually required warranty repairs unless it received millions of dollars in additional payments from I&M. (*Id.* ¶¶ 11-15, 24-27.) In the alternative, Count III asserts that if the Limitation of Liability applies to Siemens' repairs, then the warranty would have also

5

failed of its essential purpose by depriving I&M of a minimum adequate remedy for Siemens' defective equipment.  (*Id.* ¶ 27.)

Count III, which is not placed at issue by Siemens' motion, alleges that Siemens never had any right under the Contract to demand additional payments for its repair work, so that Siemens was unjustly enriched by such payments, and this money can be recovered by I&M as restitution.  (See *id.* ¶ 29 ("Siemens improperly demanded payment from I&M for warranty repair work purportedly above the amount of the Contract Price."); *see also id.* ¶¶ 11-15, 17-18, & 28-36.)   In the alternative, Count III seeks restitution based on allegations that Siemens improperly included charges for profit, "overhead," and other items not related to actual expense.  (*Id.* ¶¶ 16 & 29.)

## **LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if the complaint fails to allege facts that state a plausible claim for relief.  *NM Holdings Co., LLC v. Deloitte & Touche LLP*, 622 F.3d 613, 618 (6th Cir. 2010).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations.  *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).  Courts also may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007).

**ARGUMENT**

I.  **I&M Properly Has Asserted a Claim for Breach of Contract (Count I)**

   A.  **Count I Alleges the Elements of Siemens' Breach of Contract**

Count I adequately pleads a claim for breach of contract. Under Ohio law,[3] a breach-of-contract claim has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). Here, I&M has alleged the existence of a contract by pleading that "effective August 31, 2004, I&M and Siemens entered into the Contract for new low pressure turbine rotors and related equipment" (Compl. ¶ 10), and that under this contract, Siemens promised to repair or replace any Major Equipment that did not conform to its Warranty (*id.* ¶ 11). I&M also has alleged that that it "performed or substantially performed all conditions precedent to Siemens' liability under the Contract" (*id.* ¶ 21) because I&M has, among other things, fully paid the Firm Fixed Contract Price for the Siemens equipment (*id.* ¶ 1). *See* Fed. R. Civ. P. 9(c) (West 2012) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). I&M also has alleged that Siemens breached the contract by failing to abide by its promise to repair or replace the defective equipment at its own expense (*id.* ¶ 15), and has alleged damages by pleading that it brings this suit "to recover the millions of dollars wrongfully demanded by and paid to Siemens for warranty repairs." (*Id.* ¶ 2.)

   B.  **Siemens' Reliance on Article 22 Is Misplaced**

Siemens contends that Count I must be dismissed because it "allege[s] a breach based on Siemens' demand that I&M pay for repair and replacement costs that Siemens incurred in excess

---

[3] Section 32.1 of Attachment D to the Contract states that Ohio law governs the "rights and obligations of the parties arising out of the Contract." (Contract, Attachment D, General Terms & Conditions for Equipment Purchases § 32.1.) I&M is prepared to file a true and correct copy of Attachment D under seal in the event that this point is disputed by Siemens or at the Court's request.

of the Contract Price." (Def.'s Br. 9.) According to Siemens, "Article 22 of the Contract ... limits claims for amounts in excess of the total Contract Price, whether based in contract or warranty." (*Id.* at 8.) As such, Siemens contends that its refusal to complete the repairs until it received millions of dollars in additional payments purportedly "complied with the terms of the 2004 Contract, which limits Siemens' repair costs to the Contract Price." (*Id.* at 9.)

Siemens is wrong. The plain language of the Contract does not allow Siemens to avoid its obligation to repair nonconforming equipment at its own expense. Article 22 does not even reference repair cost, and instead creates only a limitation on "liability" resulting from a "theory of recovery":

> The parties expressly agree that the remedies provided herein are exclusive and that under no circumstances shall the total aggregate liability of either party under any theory of recovery, whether based in contract, in tort (including negligence and strict liability), under warranty, or otherwise, exceed the total price paid to contractor under this agreement.

(Contract, Art. 22 (text capitalized in original).)

Siemens' position also directly contradicts the Contract requirement of a "firm fixed price" to be paid by I&M to Siemens in exchange for warranty-conforming equipment. (*Id.*, Art. 8.) Indeed, to require I&M to pay millions of dollars more than the Firm Fixed Contract Price in order to obtain the conforming equipment for which I&M had bargained is inconsistent not only with the "firm fixed price" expressly negotiated between the parties, but also with Siemens' construction of the "Limitation of Liability" provision. Article 22 applies equally to I&M, and expressly protects I&M from a "total aggregate liability of either party under any theory of recovery" that "exceed[s] the total price paid to contractor under this agreement." (*Id.* Art. 22.) Yet that is the very liability that, according to Siemens, it sought to impose upon I&M when it determined that it could not repair its damaged equipment without incurring expenses that exceeded the Firm Fixed Contract Price.

In contrast to the Limitation of Liability's silence with respect to Siemens' obligation to repair nonconforming equipment, the Warranty explicitly states that Siemens will repair or replace nonconforming equipment "at its option and expense":

> If during the Major Equipment Warranty Period Contractor is promptly notified in writing that the Major Equipment fails to conform to the Major Equipment Warranty, [Siemens] will *at its option and expense* correct such nonconformity by repair or replacement.

(Compl. ¶ 11 (emphasis added).) Thus, under the Contract, Siemens can either (1) *avoid liability* under a "theory of recovery" by properly repairing or replacing the defective Major Equipment, or (2) *incur liability* under a "theory of recovery" by refusing to repair or replace the nonconforming equipment. Of course, repair work done to *avoid* liability cannot count toward the calculation of the "total aggregate liability" under the Limitation of Liability. On the contrary, when Siemens opts to repair equipment, the Contract states without qualification that Siemens must provide such repairs "at its … expense." (*Id.*)

I&M's reading of the Limitation of Liability has been endorsed in a case involving the corporate parent of I&M (American Electric Power Co. ("AEP")), a predecessor in interest of Siemens (Westinghouse Electric Corp. ("Westinghouse")), and a contract that is analogous to the Contract in this case (including its limitation of liability and exclusive remedy provisions). *See Am. Elec. Power Co., Inc. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435 (S.D.N.Y. 1975). In *Westinghouse*, AEP argued that Westinghouse's ineffectual repairs caused the exclusive repair-or-replace remedy provision to fail of its essential purpose. AEP further argued that, given their close operational interdependency, if the exclusive remedy provision failed of its essential purpose, the limitation of liability should similarly be deemed inapplicable. To counter this argument, Westinghouse contended that the limitation of liability provision and the exclusive remedy clause were independent, and the court agreed. *Id.* at 457.

9

Central to the court's analysis was its view that even if Westinghouse's repairs failed, the contract still provided AEP a "minimum adequate remedy" because it "specifically provides for a damage recovery *distinct* from the warranty to repair or replace." *Id.* at 458-59 (emphasis added). Thus, the court noted that if Westinghouse failed to repair the turbines, AEP still could recover "damages at least in an amount equal to the price of all uncorrected parts." *Id.* at 459. The *Westinghouse* court's findings necessarily were based on the conclusion that Westinghouse's repair costs did not erode any contractual liability cap. If repair costs had eroded the liability cap, then AEP would not have been able to recover the full purchase price of any defective equipment. It would instead have been able to recover *at most* the purchase price, minus Westinghouse's previously incurred repair costs. *Westinghouse* thus fully supports the conclusion that Article 22 does not apply to repair expense.

In contrast, Siemens has failed to cite any precedent that directly supports its reading of the Limitation of Liability. At most, Siemens cites cases like *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.* for the general principle that "[c]ourts have an obligation to give plain language its ordinary meaning and to refrain from revising the parties contract." 156 Ohio App. 3d 575, 582, 807 N.E.2d 953, 958 (2004). While this general principle is correct, Siemens never cites any cases that actually apply this general principle to analogous facts. Indeed, the actual holding of *Wauseon* is completely irrelevant, since the court there did not address a limitation of liability in a contract for the sale of goods, but rather addressed an option agreement in a real estate transaction. *Id.* at 583-84, 807 N.E.2d 953, 958-59.

## II. I&M Properly Has Alleged a Claim for Breach of Warranty (Count II)

### A. Count II Alleges the Elements of Siemens' Breach of Warranty

Under Ohio law, a claim for breach of warranty must allege: (1) the existence of a warranty; (2) that the product failed to perform as warranted; (3) that the plaintiff provided the

10

defendant with reasonable notice of the defect; and (4) that the plaintiff suffered an injury as a result of the defect. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010). Here, I&M has alleged the existence of the Warranty (Compl. ¶ 11), that the Siemens equipment failed to perform as warranted due to its catastrophic failure on September 20, 2008 (*id.* ¶ 12), and that it provided reasonable notice of the defect by submitting a claim under the warranty (*id.* ¶ 13).

Count II also alleges two types of damages. (*Id.* ¶¶ 2, 26-27.) First, Count II alleges damage as a result of Siemens' failure to repair or replace the defective equipment at its own expense. (*Id.* ¶ 13.) In the alternative, Count II alleges that if Siemens properly construed the Contract, then the Exclusive Remedy in the Warranty fails of its essential purpose and Siemens is responsible for the entire cost, without contractual limit, of remedying the damage caused by the catastrophic failure of its equipment. (*Id.* ¶ 27.) *See also* Ohio Rev. Code Ann. § 1302.93(B) (West 2012).

### B. Siemens' Breached the Contract and Caused the Exclusive Remedy to Fail by Willfully Refusing to Repair the Turbine

Siemens seeks dismissal of Count II on two alternative grounds. First, Siemens seeks dismissal on the ground that the Limitation of Liability in Article 22 of the Contract purportedly justifies its refusal to complete repairs unless I&M paid it millions of dollars in excess of the Firm Fixed Contract Price. This argument fails for the reasons set forth in Section I.B above. Second, Siemens contends that I&M purportedly has not alleged sufficient facts to support a finding that the Warranty failed of its essential purpose. That argument, too, is without merit.

Under Ohio's Uniform Commercial Code (UCC), "[w]here circumstances cause an exclusive or limited remedy [such as the Contract's Exclusive Remedy] to fail of its essential purpose, remedy may be had as provided [elsewhere under the UCC]." Ohio Rev. Code Ann.

11

§ 1302.93(B) (West 2012).  To assert such a claim, a plaintiff "need only plead facts from which the Court, reading the complaint in the light most favorable to the plaintiff, may infer that the exclusive remedy failed in its essential purpose." *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 126 F. Supp. 2d 937, 938 (E.D. Penn. 2001).

Here, I&M has alleged such "circumstances" for purposes of the Ohio UCC.  "The limited remedy of repair or replacement of defective parts fails of its essential purpose whenever, despite reasonable opportunity for repair, the goods are not restored to a nondefective condition within a reasonable time, whether or not the failure to do so is willful." *Murray v. Holiday Rambler, Inc.*, 265 N.W.2d 513, 522 (Wis. 1978).  In its Complaint, I&M alleges facts constituting a failure of the Exclusive Remedy's essential purpose by pleading that Siemens willfully refused to make repairs at its own expense in accordance with the Contract.  (Compl. ¶ 15.)  Such a refusal is a hornbook example of a circumstance where an exclusive remedy fails of its essential purpose. *See Johnson v. Monsanto Co.*, No. 11-02-02, 2002 WL 2030889, at *6 (Ohio Ct. App. Sept. 6, 2002) ("such limited warranties typically fail when the seller is unable or unwilling to grant such remedy within a reasonable time").  Indeed, even in a case where a seller ultimately repaired defective equipment, the court held that the warranty could have failed of its essential purpose "at least for the period of time it may have unreasonably taken to effect the cure." *Boyas v. Powerscreen of Ohio, Inc.*, 139 Ohio App.3d 201, 212, 743 N.E.2d 464, 471 (2000).

Moreover, the logical consequence of Siemens' construction of the Contract is that I&M had two options when presented with Siemens' ultimatum: (a) tell Siemens to abandon the ongoing repairs, in which case I&M would have paid the Firm Fixed Contract Price but would not have received warranty-conforming equipment in exchange, or (b) pay Siemens millions of

dollars in excess of the Contract Price in order to complete the repairs and be able to use the equipment that Siemens had warranted and sold for a Firm Fixed Contract Price.  In either case, I&M would have lost the material benefit of its "firm fixed price" bargain due to the catastrophic failure of Siemens' equipment.  Indeed, according to Siemens' motion, it is protected from the full expense of providing conforming equipment and can shift that cost to its buyer in the event that Siemens' equipment fails so catastrophically that Siemens would incur expense in excess of the Firm Fixed Contract Price to repair it – e.g., the very circumstances in which a buyer would most need the warranty.  Under these circumstances, I&M certainly has "plead facts from which the Court, reading the complaint in the light most favorable to the plaintiff, may infer that the exclusive remedy failed in its essential purpose." *Caudill Seed*, 126 F. Supp. 2d at 938.

Against the backdrop of the Complaint, Siemens nevertheless contends that there is no legal basis for I&M's allegation that the Exclusive Remedy fails of its essential purpose.  (Def.'s Br. 10 (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mutual Ins. Co.*, 537 N.E.2d 624, 639 (Ohio 1989)).)  Siemens argues that, in *Chemtrol*, the Ohio Supreme Court held that "a limited remedy of repair and/or replacement does not fail of its essential purpose merely because the contract excludes consequential damages and limits the buyers remedy to repair and replacement." (*Id.*)  Siemens' paraphrase bears no resemblance to the Supreme Court's actual holding, which was that "there is no evidence on which to base a finding that [the seller] was unable or unwilling to repair and/or replace the defective system within a reasonable time." *Chemtrol*, 42 Ohio St. 3d at 54-56, 537 N.E.2d at 639-40.  Specifically, under the facts of the case, the buyer repaired the malfunctioning equipment *at its own expense* before the seller could begin repairs, so essentially the seller was never given an opportunity to do the repairs.  *Id.* at 40-41, 537 N.E.2d at 627 ("[The buyer] engaged Jacco Service, Inc. ("Jacco") to repair the coils.").  As such, the *Chemtrol*

13

court never addressed the issue of whether a limitation of liability could cause an exclusive remedy to fail of its essential purpose. Indeed, Ohio law on this topic is the opposite of what Siemens contends. In *Kusens v. Bodyguard Rustproofing Co.*, an Ohio appellate court held that a limitation of liability *can* cause an exclusive remedy to fail. 23 O.O.3d 440, 440, 1980 WL 98418 (Ohio Ct. App. Jun. 26, 1980) (refusing to enforce limitation of liability that expressly limited promise to repair damage resulting from breach of warranty, since it rendered the promise to repair "illusory").

   **C. In the Event That the Exclusive Remedy Fails of its Essential Purpose, I&M Can Recover Monetary Relief for Siemens' Breach of Warranty, Including Consequential Damages**

Siemens argues that, even if the Exclusive Remedy fails of its essential purpose, I&M is not entitled to consequential damages because such a remedy is still barred by the Limitation of Liability. (Def.'s Br. 11 ("Even if a warranty remedy failed its essential purpose, that does not establish that all other limitations on remedies are necessarily void.").) In a similar vein, Siemens states that "Count II also fails because it seeks to impose liability without 'contractual limit,' but the Complaint does not allege any facts to support voiding the contractual limits of liability." (*Id.* at 9.)

Siemens again cites *Chemtrol* in support of the position that a failure of the Exclusive Remedy would not allow I&M to recover consequential damages. However, *Chemtrol* had nothing to say on this issue: "we need not decide whether the exclusion of consequential damages would remain enforceable if the repair-or-replacement remedy had failed of its essential purpose." *See* 42 Ohio St. 3d at 56, 537 N.E.2d at 640. Moreover, Ohio law on this issue is quite clear: "Ohio adopts the view that a finding under R.C. 1302.93(B) that a remedy fails of its essential purpose renders a provision excluding consequential damages unenforceable, notwithstanding the language in R.C. 1302.93(C) that such an exclusion will fail only if

14

'unconscionable.'" *Sutphen Towers, Inc. v. PPG Indus.*, 2005 Ohio 6207 ¶ 57, 2005 WL 3113450, at *13 (Ohio Ct. App. Nov. 22, 2005).  Specifically, this rule was established by the Ohio Supreme Court in the case *Goddard v. General Motors Corp.* because "R.C. 1302.83(B) provides that where an exclusive remedy fails of its essential purpose, remedy may be has as provided under the various chapters of the Revised Code," regardless of any limitation of liability.  60 Ohio St. 2d 41, 396 N.E.2d 761 (1979).[4]

Siemens further argues that the Limitation of Liability is still binding even if the Exclusive Remedy fails of its essential purpose because "I&M and Siemens are sophisticated parties that bargained for a limitation on all remedies, including remedies under 'warranty claim.'" (Def.'s Br. 11.)  In support, Siemens cites *National Mulch and Seed, Inc. v. Rexins*, but this case is irrelevant because the contract there did not have an exclusive remedy of repair or replacement of goods, so that there was a different standard for deciding whether a limitation of liability was enforceable.  2:02-cv-1288, 2007 WL 894833, at  *29 (S.D. Ohio Mar. 22, 2007) ("Unlike the buyers in the cases cited in support of its argument, National Mulch's remedy is not limited to repair or replacement of the goods sold.").

In any event, Siemens is incorrect insofar as it suggests that the "sophistication" of the parties precludes I&M from recovering normal warranty remedies as a result of the Exclusive Remedy's failure.  *See Sutphen*, 2005 Ohio 6207 ¶¶ 56-57, 2005 WL 3113450, at *13 (holding that a failure of essential purpose occurred, and all warranty remedies were available, even though parties were industrial manufacturers); *Boyas*, 139 Ohio App. 3d at 210-12, 743 N.E.2d at 471 (holding that failure of essential purpose could occur, so that all warranty remedies would

---

[4] The Court can disregard any out-of-state precedent cited by Siemens in support of a contrary position, such as the conclusion in *American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F. Supp. at 458, that under New York law a limitation of liability should be enforced even if an exclusive remedy fails of its essential purpose.  (*See* Def.'s Br. 11.)

15

be available, even though parties were excavating company and manufacturer of customized machinery).

Siemens also cites to *Long Beach Ass'n, Inc. v. Jones*, arguing that the Limitation of Liability must be enforced because courts "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." 82 Ohio St. 3d 574, 557, 697 N.E.2d 208, 210 (1998). (Def.'s Br. 12.) This generalization is inapplicable here, however, because Ohio law specifically provides that a limitation of liability does not bar recovery of normal warranty remedies (including consequential damages) when an exclusive remedy has failed of its essential purpose. *Sutphen*, 2005 Ohio 6207 ¶ 57, 2005 WL 3113450, at *13. Moreover, the holding in *Longbeach* is clearly distinguishable because the facts of the case are completely dissimilar to the facts here: *Longbeach* does not address a limitation of liability provision, a warranty, or even a contract for the sale of goods, but rather addresses whether a residential subdivision agreement restricts the use of a lagoon to only certain residents. 82 Ohio St. 3d at 576, 697 N.E.2d at 209.

Siemens cites to *Avenell v. Westinghouse Electric Corp.* for the same point, arguing that it shows there is no basis to avoid enforcement of the Limitation of Liability. (Def.'s Br. 12 (*Avenell v. Westinghouse Electric Corp.,* 41 Ohio App. 2d 150, 324 N.E.2d 583, 586 (1974).) However, the only issue regarding limitations on liability in that case was whether certain limitations were sufficiently "conspicuous" in the contract. *See Avenell*, 41 Ohio App. 2d at 155-56, 324 N.E.2d at 587. I&M is not alleging that the Article 22 is inconspicuous, so *Avenell* is irrelevant.

## **CONCLUSION**

For the foregoing reasons, the Court should reject Siemens' motion to dismiss Counts I and II of I&M's Complaint.

December 13, 2012

Respectfully submitted,

/s/ James B. Hadden
James B. Hadden (0059315) (Trial Attorney)
Anthony R. McClure (0075977)
Porter, Wright, Morris & Arthur LLP
41 S. High Street, 29th Floor
Columbus, OH 43215-6194
Telephone: (614) 227-2168
Fax: (614) 227-2100
jhadden@porterwright.com
amcclure@porterwright.com

John H. Mathias, Jr. (*pro hac vice*)
David M. Kroeger (*pro hac vice*)
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
Telephone: (312) 222-9350
Fax: (312) 527-0484
jmathias@jenner.com
dkroeger@jenner.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2012, a true and accurate copy of the foregoing was filed electronically with the Court. Notice of this filing was served upon Defendants' counsel via the Court's electronic filing system, and access to this filing is available through the Court's electronic filing system.

s/ James B. Hadden
James B. Hadden (0059315)
*Counsel for Plaintiff*
