**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **INDIANA MICHIGAN POWER CO.,** | : | Case No. 2:12-CV-00861 |
| | : | |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| v. | : | |
| | : | Magistrate Judge Mark Abel |
| **SIEMENS ENERGY, INC.,** | : | |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant Siemens Energy Inc.'s ("Defendant" or "Siemens") Motion to Dismiss Plaintiff Indiana Michigan Power Company's Complaint. (Doc. 1). Plaintiff sued Defendant alleging breach of contract (Count I); breach of warranty (Count II); and restitution (Count III) in regard to a contract for the sale and subsequent repair of a turbine rotor and related equipment. Defendant Siemens moves to dismiss Counts I and II of Plaintiff's Complaint for failure to state a claim upon which relief can be granted. (Doc. 15). For the foregoing reasons, Defendant's Motion is **GRANTED** and Counts I and II of this action are hereby **DISMISSED.**

**II. BACKGROUND**

**A. Factual Background**

*1. The Parties*

Plaintiff, Indiana Michigan Power Company ("Plaintiff" or "I&M"), is an Indiana corporation whose principal place of business is in Fort Wayne, Indiana. I&M supplies electricity to more than a half million customers in Indiana and Michigan. Approximately 36%

of that electricity is generated by the Cook Plant located in Michigan. The Cook Plant consists of two systems – Unit 1 and Unit 2 – through which water is circulated in a closed loop between a reactor core and a steam generator. The steam produced in the steam generator travels into a high-pressure turbine, three low-pressure turbines, and an electric generator. The steam causes the turbines to spin, thereby generating electricity.

Defendant, Siemens, is a Florida Corporation whose principal place of business is in Florida. Siemens sells turbine rotors and related equipment to corporations such as I&M.

*2. Relevant Contract Provisions*

In August 2004, I&M and Siemens entered into Contract C-11468 (the "Contract") for new low-pressure turbine rotors and related equipment to be designed, engineered, fabricated, loaded, transported, assembled, and installed by Siemens. (*Complaint*, Doc.1, ¶ 10.) I&M agreed to pay Siemens a lump sum, the "Contract Price," for the equipment and services provided pursuant to the Contract. (*Contract*, Doc. 17, Art. 8.) The Contract between I&M and Siemens covered the installation of three LP turbines, and had a price of $37,685,000. (*Contract*, Doc. 17, Art. 9.)

At issue are two provisions in the Contract: Article 13, which provides for Warranties (the "Warranty"); and Article 22, a Limitation of Liability under the Contract ("Limitation of Liability"). *Id.* The Warranty provision contains six specific warranties covering different equipment, services, and issues; however, only the warranty covering "Major Equipment" is at issue in the instant case. (*Contract*, Doc. 17, Art. 13.) The Warranty provision in Article 13 states:

> [Siemens] warrants that the Major Equipment furnished to [I&M], including any part repaired or replaced by [Siemens] during the Major Equipment Warranty Period, will be free of defects in workmanship and materials until ten (10) years

>from the date of shipment of the original Major Equipment to Owner (the Major Equipment Warranty Period).
>
>If during the Major Equipment Warranty Period [Siemens] is promptly notified in writing that the Major Equipment fails to conform to the Major Equipment Warranty, [Siemens] will at its option and expense correct such nonconformity by repair or replacement.

(*Contract*, Doc. 17, Art. 13.) "Major Equipment" covered by the Contract includes, among other equipment, the rotors and rotating blades. (*Contract*, Doc. 17, Art. 12.) The remedies set forth in the Contract are I&M's exclusive remedies for defective or nonconforming equipment. Specifically, Article 19, which provides that the guarantees and remedies are exclusive, states:

>The guarantees set forth in Articles 13 through 17 are exclusive and are in lieu of all other warranties whether statutory, express, or implied (including all warranties of merchantability and fitness for a particular purpose, and all warranties arising from course of dealing or usage of trade). Correction of nonconformity in the manner and for the time period above shall constitute Contractor's sole liability and Owner's exclusive remedy for defective or nonconforming Equipment, Major Equipment, or Services whether claims of the Company are based in contract, in tort (including negligence and strict liability), or otherwise.

(Capitalized in original) (*Contract*, Doc. 17, Art. 19.)[1] In addition to the general Warranty provision, the parties agreed to a provision limiting the liability of both parties in the event of repair or replacement of the turbine rotors. The Limitation of Liability states in its entirety:

>The parties expressly agree that neither party nor its suppliers will under any circumstances be liable under any theory of recovery, whether based on contract, in tort (including negligence and strict liability), under warranty, or otherwise, for: *any indirect, special, incidental or consequential loss or damage whatsoever*; damage to or loss of property or equipment; loss of profits or revenue; loss of use of owner's material, equipment or power system; loss of data; increased costs of any kind, including but not limited to capital cost, fuel cost and cost of purchased or replacement power; or claims of customers. Damage suffered as a result of the unauthorized disclosure of proprietary information shall not be considered an excluded damage under this section.

---

[1] Originally the Guarantees and Remedies in Article 19 were limited to Articles 14 through 17, but both parties amended the provision to include Article 13 and initialed the change. (*Contract*, Doc. 17, Art. 19; *Motion to Dismiss,* Doc. 15-1, at 4.)

3

> The parties expressly agree that the remedies provided herein are exclusive and that *under no circumstances shall the total aggregate liability of either party under any theory of recovery, whether based in contract, in tort* (including negligence and strict liability), *under warranty, or otherwise, exceed the total price paid to contractor under this agreement.*
>
> The provisions of this article shall prevail over any conflicting or inconsistent provisions set forth elsewhere in this provision.

(Capitalized in original; emphasis added.) (*Contract*, Doc. 17, Art. 22.)

### 3. The Dispute

On September 20, 2008, two of the low-pressure turbines suffered damage when turbine blades broke off their rotor while Unit 1 was at full power. (*Complaint*, Doc. 1, ¶ 12.) As a result, Unit 1 was shut down while the entire power train—the high-pressure turbine, three low-pressure turbines, electric generator, and supporting systems—and other related plant equipment were repaired. *Id.*

After the equipment failure, I&M submitted a warranty claim to Siemens. (*Complaint*, Doc. 1, ¶ 13.) Siemens acknowledged receipt of the claim and exercised its option under the Warranty to repair the warranted equipment instead of replacing it. *Id.* Siemens alleges that its written acknowledgment of the warranty notice reserved the right to contest whether the repair work was covered by the warranty because Siemens had not yet completed any investigation as to the cause of the damage. (*Motion to Dismiss*, Doc. 15-1, at 6 n.2.)

In order to facilitate the repairs, I&M shipped the damaged equipment from the Cook Plant in Michigan to a Siemens facility in North Carolina. (*Complaint*, Doc. 1, ¶ 14.) The necessary work was performed by Siemens pursuant to the Parties' 2009 Amendments to the 2004 Contract. (*Contract*, Doc. 17-1, Amend.4, Art.1.) The Amendments authorized payment of an additional amount for costs that exceeded the Contract limitation of liability and for additional work outside the scope of the Contract. *Id.* Siemens alleged that the expenses it

4

would incur by repairing the damaged equipment would exceed the Contract Price. (*Complaint*, Doc. 1, ¶ 15.)  Siemens paid the costs up to the Contract Price, and required I&M to pay for repair costs above the Contract Price. *Id.*  Siemens demanded payment from I&M before it would fulfill its warranty obligation based on the Limitation of Liability provision in the Contract. *Id.*

I&M alleges that Siemens improperly included charges for profit, "overhead," and other items not related to the actual cost of the warranty repair in calculating the amount of its purported expenses to repair the equipment. (*Complaint*, Doc. 1, ¶ 16.)  I&M paid the amount demanded by Siemens, and now seeks to recover the millions of dollars it paid for repair work above the Contract Price. *Id.* at ¶ 18.  I&M claims that Siemens should have performed this work at its own expense. *Id.*

Siemens argues that under the terms of the 2004 Contract its aggregate liability under any claim is not to exceed the total price paid under the Contract. (*Motion to Dismiss*, Doc. 15-1, at 2.)  Siemens argues that the Contract terms—specifically the Limitation of Liability—are clear and unambiguous. *Id.* at 5.  Siemens maintains that it is entitled to reimbursement for the substantial costs incurred up to the contractual limit of liability for the work performed in order to repair and replace the turbine rotors. *Id.*  Siemens contends that I&M's only possible claim for relief is restitution and that claims for breach of contract and breach of warranty are inapplicable. *Id.*

### B. Procedural Background

On September 19, 2012, I&M filed a Complaint in this Court asserting breach of contract, breach of warranty, and a claim for restitution. (Doc. 1.)  In Count I of its Complaint, I&M alleges that the parties entered into a valid contract, that I&M performed or substantially

5

performed all conditions precedent to Siemens' liability under the Contract, that Siemens breached the Contract by refusing to perform properly its obligations under the Contract, and that I&M suffered damages as a result.

In Count II, I&M makes two alternative allegations. First, I&M argues that Siemens breached the Warranty in the Contract by failing to repair or replace the defective equipment at its own expense. In the alternative, I&M contends that if Siemens did fully perform under the Contract by invoking the limited remedy provided by the Warranty then this remedy failed of its essential purpose. I&M argues that Siemens is responsible for the entire cost of remedying the damage caused by the failure of its equipment, including consequential damages caused by that failure. I&M requests contractual damages in both Counts. In the alternative to Counts I and II, I&M alleges in Count III that even if Siemens was owed some additional payment for its warranty repair work above the amount of the Contract Price, Siemens improperly included charges for profit, "overhead," and other items not related to the actual expense of the warranty repair. (*Complaint*, Doc. 1, ¶ 29.)

Siemens moves to dismiss Counts I and II of I&M's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc.15.) Siemens argues that Counts I and II require dismissal because enforcement of these Counts alleging Breach of Contract and Breach of Warranty would violate the express Limitation of Liability agreed to in the 2004 Contract. Siemens does not seek to dismiss Count III at this time, for the amount of restitution depends on the disputed accounting of repair and replacement charges. I&M opposes the Motion to Dismiss Counts I and II (Doc.18.) The motions are fully briefed and ripe for decision.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 127 S.Ct. 1955 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

## IV. LAW AND ANALYSIS

Siemens moves this Court to dismiss Counts I and II of Plaintiff's Complaint because I&M has not pled plausible claims for Breach of Contract or for Breach of Warranty.

### A. Breach of Contract Analysis

In Count I, I&M alleges that Siemens breached the contract by refusing to perform properly its obligations under the Contract. Under Ohio law, a plaintiff must satisfy four elements to establish a breach of contract claim: 1) the existence of a binding contract; 2) the non-breaching party performed its contractual obligations; 3) a breach in contractual obligations by the other party; and 4) the non-breaching party suffered damages as a result of the breach. *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 582, 807 N.E.2d 953 (Ohio Ct. App. 2004); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 107, 661 N.E.2d 218 (Ohio Ct. App. 1995). It is undisputed that the Contract executed by I&M and Siemens is a valid contract. The issue is whether there was a breach. I&M argues that the amount sought from Siemens is not affected by the Limitation of Liability provision and that the Warranty provision is independent and controlling. (*Pl. Response*, Doc. 18, at 9.)

*1. Limitation of Liability – Article 22*

Under Ohio law, interpretation of a written contract is a matter of law for initial determination by the Court. *Construction Interior Sys., Inc. v. Marriott Family Rests., Inc.*, 984 F.2d 749, 754 (6th Cir. 1993) (applying Ohio law); *see also Long Beach Ass'n, Inc. v. Jones*, 697 N.E.2d 208, 209 (Ohio 1998). Moreover, contract interpretation is only turned over to the fact-finder when the relevant contract language is ambiguous. *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) (applying Ohio law). The Court decides whether a contract is ambiguous as a matter of law. *Id.*

The Contract provisions at issue unambiguously state that the Limitation of Liability is to prevail over the general Warranty.  Allegations by I&M that they are independent are without merit.  Under the Limitation of Liability, Siemens can under no circumstances be liable for any claims above the total Contract Price.  (*Contract*, Doc. 17, Art. 22.)  As the Supreme Court has explained, the ordinary rule with respect to the construction of contracts is that a more specific provision will prevail over one that is general in its terms.  *Mut. Life Ins. Co. v. Hill*, 193 U.S. 551, 558, 24 S.Ct. 538, 48 L.Ed. 788 (1904) ("[W]hen the parties express themselves in reference to a particular matter, the attention is directed to that, and it must be assumed that it expresses their intent; whereas a reference to some general matter, within which the particular may be included, does not necessarily indicate that the parties had the particular matter in thought.").  The Limitation of Liability—the more specific provision—is therefore controlling. It places a cap on claims for amounts in excess of the total Contract Price whether based in contract or warranty.

I&M seeks to avoid the unambiguous language in the Limitation of Liability clause in order to assert a claim for breach of warranty.  I&M fails, however, to state a basis for ignoring the parties agreed upon assignment of risk.  *See Kelly v. Med. Life Ins. Co*., 509 N.E.2d 411, 411 (Ohio 1987) ("The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.").  I&M alleges that Siemens breached the Contract by demanding that I&M pay for repair and replacement costs in excess of the Contract Price; however, the Complaint does not allege any facts to support voiding the contractual Limitation of Liability.  Siemens' demand complied with the terms of the Contract limiting Siemens' repair costs to the Contract Price.

I&M contends further that Article 22 does not apply to repair expense and, therefore, the repair costs do not negate any contractual liability cap because repair costs are not a "liability" under Article 22. (*Pl. Response*, Doc. 18, at 9-10.) This narrow reading of the provision is misplaced. Article 22 includes "*any theory* of recovery, whether based in contract . . . [or] under warranty." (*Contract*, Doc. 17, Art. 22.) Article 22 thus informs that a theory of recovery based on contract or warranty is a form of liability covered by the Contract. Siemens and I&M understood that costs associated with repair counted toward Article 22's total aggregate liability. Both parties acknowledged in the agreed upon 2009 Amendment that Siemens could perform "warranty work that exceeds the Contract limitation of liability." (*Contract*, Doc. 17, Amend. No. 4, Att. A, at 1.) I&M's interpretation of Article 22 would lead to absurd results and render the Limitation of Liability meaningless.

### 2. Enforceability of Article 22 Independent of Warranty Remedy

I&M also asserts that the Limitation of Liability provision and the Exclusive Remedy clause are independently enforceable. (*Pl. Response*, Doc. 18, at 9-10.) I&M argues that this reading of the Limitation of Liability is endorsed in *American Electric Power Company, Inc. v. Westinghouse Electric Corporation*, 418 F. Supp. 435 (S.D.N.Y. 1975),[2] a case involving the corporate parent of I&M, a predecessor in interest of Siemens, and a contract that is analogous to the Contract in this case. The dispute in *Westinghouse* involved damaged turbine rotors covered by a limitation of liability in the contract stating that under no circumstance would a remedy exceed the contract price. *Id.* at 459. The *Westinghouse* court held, however, that the limitation of liability remained enforceable even if repairs failed, because the contract "specifically

---

[2] The similar contract provision in *Westinghouse* provided that: ". . . The remedies of the purchaser set forth herein are exclusive, and the liability of Seller with respect to any contract, or anything done in connection therewith . . . whether in contract, in tort, under any warranty, or otherwise, shall not, except as expressly provided herein, exceed the price of the equipment of (or) part on which such liability is based." *Westinghouse*, 418 F.Supp at 459.

10

provide[d] a damage recovery distinct from the warranty to repair or replace." (*Pl. Response*, Doc. 18, at 10; citing *Westinghouse*, 418 F.Supp. at 458-59.)  The court acknowledged the effectiveness of a limitation of liability, and found that under the facts of the case it did not stand independently of the contract's warranty clause.  *Westinghouse*, 418 F.Supp. at 457.

The *Westinghouse* court identified three factors that supported the enforcement of the limitation of liability in that case.  First, the contract's separate warranty remedy provision and limitation of liability provision expressed the parties' "consensual allocation of business risk." *Id.* at 458.  It was the court's view that this represented the parties' intent and understanding that the failure of the warranty remedy would not void the liability limitation.  *Id.* Second, the contract at issue was "not the type entered into by an average consumer, but rather a commercial agreement painstakingly negotiated between industrial giants." *Id.*  The court went on to note that the rule that an "agreed-upon allocation of commercial risk should not be disturbed is particularly appropriate where, as here, the warranted item is a highly complex . . . piece of equipment." *Id.*  In *Westinghouse*, as in the case sub judice, the machinery at issue was a multi-million dollar turbine generator, and it is for this reason that both contracts incorporated limitations on liability.  Third, the plaintiff in Westinghouse was not left "without at least a 'minimum adequate remedy,'" which the court noted was perhaps the most important factor to consider. *Id.*

All three rationales are equally applicable to this case, thus supporting the enforcement of the similarly constructed Limitation of Liability.  First, the parties expressly allocated and limited the risk above the Contract Price by inserting Article 22 into the Contract.  Second, both I&M and Siemens are sophisticated companies contracting for the sale and repair of multi-million dollar turbine generators.  The Contract was the result of carefully negotiated terms.

11

Finally, this Court finds that I&M received an adequate remedy because Siemens performed repair work up to the value of the Contract Price, as agreed upon in Article 22. Ohio Law provides that "[c]onsequential damages may be limited or excluded." Ohio Rev. Code Ann. § 1302.93(C) (West 2012). As such, "reasonable agreements limiting or modifying remedies are to be given effect." § 1302.93, Official Comment. A provision that limits liability for "indirect, special, incidental or consequential" damages and limits liability to the "total price paid" under a contract is enforceable under Ohio Law. (*Contract*, Doc. 17, Art. 22); *see also 7 Medical Systems, LLC v. Open MRI of Steubenville*, No. 11-JE-23, 2012 WL 2522646 at *1, *7 (Ohio Ct. App. June 18, 2012). The bargained for Limitation of Liability provides a remedy up to the Contract Price for any direct damages suffered, and, therefore, I&M has a minimum adequate remedy.

Thus, Defendant's Motion to Dismiss Count I of Plaintiff's complaint is therefore **GRANTED.**

### B. Breach of Warranty Analysis

In Count II, I&M alleges that the Warranty remedy provided in Article 13 of the Contract was breached because Siemens failed to repair or to replace the defective Major Equipment at its own expense. In the alternative, Count II alleges that even if Siemens did fully perform under the Contract and Warranty by invoking the limited exclusive remedy stated in the Warranty, then this warranty failed of its essential purpose and Siemens is responsible for the entire cost, without contractual limit, of remedying the damage caused by the equipment failure. (*Complaint*, Doc. 1, ¶ 26-27.) Siemens seeks dismissal of this claim on the grounds that: (1) I&M fails to allege breach of warranty because it ignores the application of the Limitation of

12

Liability; and (2) reliance on the Limitation of Liability does not cause the Warranty remedy to fail of its essential purpose.  (*Def.'s Reply Br.*, Doc. 21, 9.)

*1.  Breach of Warranty*

To state a claim for breach of warranty under the Uniform Commercial Code ("UCC") as adopted by Ohio, a plaintiff must allege: (1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect.  *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010).  I&M claims that it has properly alleged breach of warranty because the Complaint alleges that a warranty exists, Siemens' equipment failed to perform as warranted, I&M provided reasonable notice of the alleged defect by submitting a claim under the warranty, and I&M incurred damages because I&M paid for the repairs above the Contract Price.  (*Pl. Response*, Doc. 18, at 11.)

The parties specified in the Limitation of Liability section that neither party would be liable to the other under any theory, including warranty claims, for amounts in excess of the total price paid under the Contract.  (*Contract*, Doc. 17, Art. 22.)  I&M's first allegation in Count II— that Siemens failed to repair or replace the defective equipment at its own expense—ignores the purpose of the Limitation of Liability in Article 22 of the Contract.  As this Court concluded in Section IV.A. *supra*, I&M misconstrues the enforceability of the Warranty Remedy in light of the parties' agreed upon Limitation of Liability.

I&M fails to allege a valid claim for breach of warranty because it ignores the application of Article 22, which limits Siemens' liability under the general Warranty to the Contract Price. I&M's first contention in Count II is thus without merit.

*2. Essential Purpose of Warranty Remedy*

In the alternative, I&M argues that even if Siemens did fully perform under the Contract by invoking the limited remedy and requiring payment above the Contract Price, then this remedy fails of its essential purpose. (*Complaint*, Doc. 1, ¶ 27.) I&M argues that this failure of essential purpose makes Siemens responsible for the entire cost of the repair, including consequential damages. *Id.*[3]

While the UCC provides a remedy for consequential damages, Ohio Law also allows the parties to agree to limit the buyer's remedy. A seller may limit the buyer's remedies for breach of warranty to the price necessary to repair or replace the nonconforming goods or parts. Ohio Rev. Code Ann. §§ 1302.93(A)(1) and 1302.29(D). Contractual provisions limiting or excluding consequential damages are permissible "unless the limitation or exclusion is unconscionable." § 1302.93(C).

Courts are reluctant to find unconscionable limitations in commercial contracts, for there is rarely unequal bargaining power among the parties. § 1302.93(C) ("Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not."). *See Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 639 (Ohio 1989). Contracting parties are instead free to rely on the warranties and limitations they choose to place in their contracts. *Id.* at 638. As already discussed by this Court with regard to Count I, a bargained for "allocation of commercial risk should not be disturbed," especially when "the warranted item is a highly complex" piece of equipment such as an expensive turbine. *Westinghouse*, 418 F. Supp.

---

[3] R.C. 1302.93(B) provides in part: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters * * * [1301 through 1309, inclusive] of the Revised Code."

at 458.  There is no allegation that I&M and Siemens entered into the Limitation on Liability under unconscionable circumstances.  This Court can therefore presume that it was to the benefit of each party to include such a provision in the Contract to insure its interest in the complex and expensive equipment.

Limited remedy provisions are common in contracts in order "to give the seller an opportunity to cure the defect" while simultaneously limiting excessive risk "by excluding direct and consequential damages."  *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products Inc.*, 2:02-CV-1288, 2007 WL 894833, *29 (S.D. Ohio Mar. 22, 2007) (citing *Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 960 (N.D. Ohio 1997)).  A limited remedy may fail of its essential purpose when the seller is unable to repair and replace warranted goods and the buyer is left with no benefit.  *Id.* at *28.  This type of failure often occurs when the seller either refuses to repair the goods or is unable to cure a breach.  *Id.*

There is no evidence presented in the instant case that Siemens refused to repair or was unable to cure an alleged breach.  While it is undisputed that Siemens requested payment above the Contract Price before it would continue its repair efforts, this limitation was included in Article 22 and therefore cannot be characterized as a refusal to repair the goods.  (*Contract*, Doc. 17, Art. 22.)  Contrary to I&M's allegations, there is no evidence in this case to base a finding that Siemens was unable or unwilling to repair the Major Equipment within a reasonable time.  (*Pl. Response,* Doc. 18, at 11.)

Siemens relied on its right to limit its liability to the Contract Price as set forth in the provisions of Article 22.  (*Complaint*, Doc. 1, ¶ 15.)  Paragraph two of the Limitation of Liability provides that "under no circumstances" shall the total liability of either party "exceed the total price paid."  (*Contract*, Doc. 17, Art. 22.)  These provisions are binding on both parties, and

were designed to "prevail over any conflicting or inconsistent provisions set forth elsewhere" in the Contract, including the Warranty in Article 13. *Id.* Enforcement of the Limitation of Liability therefore complies with the essential purpose of the Contract's terms.

Because it does not fail of its essential purpose, the Limitation of Liability as applied to the Warranty remedy excludes incidental and consequential damages from I&M's restitution claim against Siemens as alleged in Count III.[4] Accordingly, this Court finds that both the "Warranty" and the "Liability Limitation" provision of the Contract are valid and enforceable.

Thus, Defendant's Motion to Dismiss Count II of Plaintiff's Complaint is therefore **GRANTED.**

## V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant Siemens' Motion to Dismiss Counts I and II of I&M's Complaint.

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATE: August 26, 2013**

---

[4] As such, this Court need not decide whether the exclusion of consequential damages would remain enforceable if the remedy had failed of its essential purpose. (*Pl. Response*, Doc. 18, at 14.)