IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **INDIANA MICHIGAN POWER CO.,** : | |
| : | Case No. 2:12-CV-861 |
| **Plaintiff,** : | |
| : | JUDGE ALGENON L. MARBLEY |
| vs. : | |
| : | Magistrate Judge Mark R. Abel |
| **SIEMENS ENERGY, INC.,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Siemens Energy Inc.'s ("Siemens") Motion to Dismiss (Doc. 34-1) Plaintiff Indiana Michigan Power Company's ("IM") Amended Complaint. (Doc. 33). Plaintiff sues Defendant alleging breach of contract (Count I), breach of warranty (Count II), and restitution (Count III). Defendant moves to dismiss Counts I and II for failure to state a claim upon which relief can be granted. (Doc. 34-1). For the foregoing reasons, Defendant's Motion is **GRANTED**, and Counts I and II of this action are hereby **DISMISSED**.

### II. BACKGROUND

#### A. Factual Background

Plaintiff, IM, is an Indiana corporation whose principle place of business is in Fort Wayne, Indiana. (Doc. 33 at ¶ 3). IM supplies electricity to more than a half million customers in Indiana and Michigan. (*Id.* at ¶ 8). Approximately one-third of that electricity is generated by the Cook Plant located in Michigan. (*Id.*). The Cook Plant consists of two systems – Unit 1 and Unit 2. (*Id.* at ¶ 9).

Defendant, Siemens, is a Delaware corporation whose principle place of business is in Florida. (Doc. 35 at ¶ 4). Siemens sells turbine rotors and related equipment to corporations such as IM.

In August 2004, IM and Siemens entered into Contract C-11468 (the "Contract") for new low-pressure turbine rotors and related equipment to be designed, engineered, fabricated, loaded, transported, assembled, and installed by Siemens. (Doc. 33 at ¶ 10). IM agreed to pay Siemens a lump sum, the "Contract Price," for the equipment and services provided pursuant to the Contract. (Doc. 17 at 4). The Contract between IM and Siemens had a price of $37,685,000. (*Id.* at 5).

Two provisions in the Contract are at issue: Article 13, which provides for general Warranty (the "Warranty"); and Article 22, a Limitation of Liability under the Contract ("Limitation of Liability"). (Doc. 17). The Warranty provision contains six specific warranties covering different equipment, services, and issues; however, only the warranty covering "Major Equipment" is at issue *sub judice*. (*Id.* at 7). The Warranty provision in Article 13 states:

> [Siemens] warrants that the Major Equipment furnished to [IM], including any part repaired or replaced by [Siemens] during the Major Equipment Warranty Period, will be free of defects in workmanship and materials until ten (10) years from the date of shipment of the original Major Equipment to Owner (the Major Equipment Warranty Period).
>
> If during the Major Equipment Warranty Period [Siemens] is promptly notified in writing that the Major Equipment fails to conform to the Major Equipment Warranty, [Siemens] will at its option and expense correct such nonconformity by repair or replacement.

(*Id.*). The remedies set forth in the Contract are IM's exclusive remedies for defective or nonconforming equipment. (*Id.* at 12). Specifically, Article 19 provides that the guarantees and remedies are exclusive:

> The guarantees set forth in Articles 13 through 17 are exclusive and are in lieu of all other warranties whether statutory, express, or implied (including all warranties of

2

>merchantability and fitness for a particular purpose, and all warranties arising from course of dealing or usage of trade).  Correction of nonconformity in the manner and for the time period above shall constitute Contractor's sole liability and Owner's exclusive remedy for defective or nonconforming Equipment, Major Equipment, or Services whether claims of the Company are based in contract, in tort (including negligence and strict liability), or otherwise.

(*Id.*).[1]  In addition to the general Warranty provision, the parties agreed to a provision limiting the liability of both parties in the event of repair or replacement of the turbine rotors.  The Limitation of Liability states:

>The parties expressly agree that neither party nor its suppliers will under any circumstances be liable under any theory of recovery, whether based on contract, in tort (including negligence and strict liability), under warranty, or otherwise, for: *any indirect, special, incidental or consequential loss or damage whatsoever;* damage to or loss of property or equipment; loss of profits or revenue; loss of use of owner's material, equipment or power system; loss of data; increased costs of any kind, including but not limited to capital cost, fuel cost and cost of purchased or replacement power; or claims of customers.  Damage suffered as a result of the unauthorized disclosure of proprietary information shall not be considered an excluded damage under this section.
>
>The parties expressly agree that the remedies provided herein are exclusive and that *under no circumstances shall the total aggregate liability of either party under any theory of recovery, whether based in contract, in tort* (including negligence and strict liability), *under warranty, or otherwise, exceed the total price paid to contractor under this agreement*.
>
>The provisions of this article shall prevail over any conflicting or inconsistent provisions set forth elsewhere in this provision.

(Doc. 17 at 13) (emphasis added).

In September 2008, two of the low-pressure turbines suffered damage when the turbine blades broke off their rotor while Unit 1 was at full power.  (Doc. 33 at ¶ 12).  IM shut down Unit 1 while the entire power train – the high-pressure turbine, three low-pressure turbines, electric generator, and supporting systems – and other related plant equipment were repaired.  (*Id.*).

---

[1] Originally the Guarantees and Remedies in Article 19 were limited to Articles 14 through 17, but both parties amended the provision to include Article 13 and initialed the change.  (Doc. 17 at 14).

After the equipment failure, IM submitted a warranty claim to Siemens. (*Id.* at ¶ 13). Siemens acknowledged receipt of the claim and exercised its option under the Warranty to repair the warranted equipment instead of replacing it. (*Id.*).

In order to facilitate the repairs, IM shipped the damaged equipment from the Cook Plant in Michigan to a Siemens facility in North Carolina. (Doc. 33 at ¶ 14). The necessary work was performed by Siemens pursuant to the Parties' 2009 Amendments to the 2004 Contract. (Doc. 17-1). Siemens paid the costs up to the Contract Price, and required IM to pay for repair costs above the Contract Price. (Doc. 33 at ¶ 15).

In its initial complaint, IM alleged that Siemens improperly demanded money from IM in order to complete the repairs because the repairs were covered by the general Warranty within the contract. (Doc. 1). This Court dismissed those counts and found that the Limitation on Liability clause superseded the general warranty clause. (Doc. 24). IM now claims in its amended complaint that Siemens refused and/or failed to correct the equipment, and thus Siemens breached the contract and warranty. (Doc. 33 at ¶ 19). Specifically, IM alleges that the repairs that Siemens completed in 2009 were inadequate because the repaired equipment had to be replaced in 2011. (Doc. 41 at 15). IM states that the defect is that the repaired equipment would not be expected to last through the end of the ten year warranty period in the general Warranty. (*Id.*). IM does not posit any facts that suggest that IM notified Siemens of a defect after the repairs were completed, but instead IM states that Siemens already knew of the alleged defect. (*Id.*). IM seeks to amend its pleadings to include a letter from Siemens stating that the spindle and discs and La-1 and La-2 equipment parts are expected to have 33,600 life hours, approximately 3.8 years. (Doc. 44-1).

In Count III, IM alleges that Siemens included improper charges for profit, "overhead," and other items unrelated to the cost of the warranty repair (Doc. 33 at ¶ 16). This allegation is not addressed in Siemens' Motion to Dismiss.

Siemens argues that, under the terms of the 2004 Contract, its aggregate liability of any claim is not to exceed the total price paid under the Contract. (Doc. 34-1 at 2). Siemens maintains that it repaired the equipment effectively, as evidenced by IM's use of the repaired equipment from 2009-2011. (*Id.* at 2). Further, Siemens alleges that IM did not provide notice of any defect after receipt of the repaired equipment in 2009. (*Id.* at 6). Siemens contends that IM's only possible claim for relief is restitution and that claims for breach of contract and breach of warranty are inapplicable. (*Id.*).

## B. Procedural Background

In September 2013, IM filed a Complaint in this Court alleging breach of contract, breach of warranty, and a claim for restitution. (Doc. 1). This Court dismissed the breach of contract and breach of warranty claims because the Limitation of Liability provision prevails over the more general Warranty provision, and Siemens fulfilled its obligations under the Limitation of Liability. (Doc. 24). IM thereafter amended its complaint (Doc. 33), and accordingly Siemens filed another Motion to Dismiss. (Doc. 34-1).

In Count I, IM alleges that the two parties entered into a valid Contract and IM performed all conditions precedent to Siemens' liability under the Contract. (Doc. 33 at ¶¶ 20, 21). IM further alleges that Siemens did not perform its obligations under the Contract, thereby resulting in damages for IM. (*Id.* at ¶¶ 22, 23).

In Count II, IM makes two alternative allegations. First, IM argues that the parties entered into the Contract, including the general Warranty provision, and Siemens breached that

5

Warranty by refusing to correct the nonconformity in the Major Equipment. (*Id.* at ¶¶ 26, 27). In the alternative, IM alleges that if Siemens' performance under the Warranty was adequate, then the remedy failed of its essential purpose. (*Id.* at ¶ 28).

Both counts are the same as the claims that this Court already dismissed under 12(b)(6) except for the addition of a factual allegation that Siemens failed to repair the nonconformity in Major Equipment. (Doc. 33 at ¶ 19).

As with the original complaint, Siemens moves to dismiss Counts I and II of IM's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 34-1). Siemens argues that Counts I and II require dismissal because enforcement of these Counts alleging Breach of Contract and Breach of Warranty would violate the express Limitation of Liability in the 2004 Contract, and IM gave no notification of any defect after repairs. (*Id.* at 13 at ¶ 3). Siemens does not seek to dismiss Count III at this time. IM opposes the Motion to Dismiss Counts I and II. (Doc. 41). The motions are fully briefed and ripe for decision.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir.2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008). But the Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare

6

assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). But the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir.2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## IV. LAW AND ANALYSIS

### A. Breach of Contract Analysis

In Count I, IM alleges that Siemens breached the contract by refusing properly to perform its obligations under the Contract. (Doc. 33 at ¶ 23). Specifically, IM argues that Siemens did not repair the Major Equipment to comply with the ten year Warranty. (*Id.* at ¶ 19).

Under Ohio law, a plaintiff must satisfy four elements to establish a breach of contract claim: (1) the existence of a binding contract; (2) the non-breaching party performed its contractual obligations; (3) a breach in contractual obligations by the other party; and (4) the non-breaching party suffered damages as a result of the breach. *McDonald v. Canton Med. Edn. Found., Inc.*, 995 N.E.2d 1216, 1221 (Ohio Ct. App. 2013); *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 582, 807 N.E.2d 953 (Ohio Ct. App. 2004).

Neither party disputes the existence of a binding contract. The issue is whether Siemens breached through its repair of the Major Equipment. IM claims that the breach occurred when Siemens inadequately repaired the equipment so that it did not last through the ten year period required in the general Warranty. (Doc. 41 at 9).

In its response, IM asserts two reasons this Court should deny Siemens' Motion to Dismiss.  First, it claims that it "alleged that Siemens has failed to comply with its obligations to repair the Major Equipment under the Contract.  For this simple reason alone, the Court should deny Siemens' motion."  (Doc. 41 at 10).  But this Court is not required to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  This Court already found, as a matter of law, that Siemens has already provided repair work up to its limit of liability in accordance with the Limitation of Liability.  (Doc 24 at 12).  Thus, IM's first assertion fails.

Second, IM asserts that Siemens has refused and/or failed to repair the Major Equipment within a reasonable time and therefore the limited warranty does not meet its purpose and should not be enforced.  (Doc. 41 at 10).  It is true that a limitation on liability will fail "when evidence shows that the seller either refuses to repair or replace the goods or, despite attempting to repair, the seller was not able to cure its breach."  *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products Inc.*, 2007 WL 894833, at *29 (S.D. Ohio 2007) (citing *Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 960-61 (N.D. Ohio 1997)).  But as this Court already held, the Limitation of Liability prevails over the general Warranty in the Contract.  *Indiana Michigan Power Co. v. Siemens Energy, Inc.*, 2013 WL 4537066, at *6 (S.D. Ohio 2013).  Siemens expended the total price of the contract, over $37,000,000, while completing the repairs, so any allegation that Siemens *refused* to repair must fail.  Furthermore, IM operated the repaired Unit I from 2009 until 2011, so an allegation that Siemens *failed* to repair cannot survive a motion to dismiss.

By assuming the maximum amount of expenditures outlined in the Limitation of Liability, Siemens fulfilled its obligations under the contract. Defendant's Motion to Dismiss Count I is **GRANTED**.

### B. Breach of Warranty Claim

In Count II, IM asserts that Siemens breached the Warranty by refusing and/or failing to correct the defect in the equipment. (Doc. 33 at ¶ 27). Or in the alternative, if Siemens did perform under the Warranty, then IM contends the warranty failed of its essential purpose. (*Id.* at ¶ 28). Siemens moves to dismiss these claims because: (1) it satisfied its obligations under Article 22 of the Contract; and (2) IM failed to notify Siemens of any defect in its repair work. (Doc. 34-1 at 6, ¶ 4).

For a proper breach of warranty claim in Ohio, a plaintiff must allege: (1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect. *Ultimax, Inc. v. Mercedes-Benz USA, LLC*, 2008 WL 974036, at *9 (S.D. Ohio 2008). For such a claim to survive a Motion to Dismiss, Plaintiff must plead facts that support all four necessary elements.

The third element requires notice, and adequacy of notice is ordinarily a question of fact. *See Kabco Equip. Specialists v. Budgetel, Inc.*, 2 Ohio App. 3d 58, 61, 440 N.E.2d 611, 614 (Ohio Ct. App. 1981). But the Sixth Circuit ruled that a breach of warranty claim requires notification when a repair effort has failed. *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 827 (6th Cir. 1978) (where the court reversed a jury verdict because the buyer did not notify seller that its repairs failed). A first notice of defect will not carry over to notify a seller of defect after repairs are complete. *See id.* The court reasoned that notice of defective

repairs would have alerted the seller to the possibility of litigation, which would have allowed the seller to attempt further repairs or gather evidentiary support for its repair and allowed for settlement discussion. *See id.* In Ohio, "[t]he content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." Ohio Rev. Code Ann. tit. 13 § 1302.65 (2012).

In the case *sub judice*, IM has not alleged that it notified Siemens at any point between 2009 and 2011 that the repairs had failed. In fact, the Unit was operational during that time. IM only asserts one defect: the short life span of the equipment after repairs. IM contends that Siemens had notice of this alleged defect because the expected life hours of the equipment after repair (33,600 hours or 3.8 years) falls short of the Warranty's ten year guarantee. (Doc. 41 at 2). IM submits a letter from Siemens that includes the 33,600 hour life span for some of the repaired equipment as proof that Siemens was on notice. (Doc. 44-1). IM did not provide even minimal notice to Siemens. IM cannot assume that Siemens knew that IM considers the life hours to be a defect. Even though issues of notice are typically questions of fact, IM did not convey the minimum required notice, that "the transaction is troublesome and must be watched," so this breach of warranty claim must fail. Tit. 13 § 1302.65.

Furthermore, even if IM had provided appropriate notice, Siemens could not be liable for additional repairs because of the Limitation of Liability. This Court already held that "[u]nder the Limitation of Liability, Siemens can under no circumstances be liable for any claims above the total Contract Price." *Indiana Michigan*, 2013 WL 4537066, at *5. Siemens is not liable for additional repairs after it already expended the contract price in repairs, so IM's breach of warranty claim fails.

### C. Essential Purpose

In the alternative, IM argues that even if Siemens did fully perform under the Contract and Warranty, then the remedy failed of its essential purpose because Siemens was unwilling and/or unable to cure the nonconformity.  (Doc. 33 at ¶ 28).  "A limited remedy fails of its essential purpose when the aggrieved party cannot obtain the intended benefit of the remedy for which it bargained."  *Nat'l Mulch.*, 2007 WL 894833, at *29.  A warranty's essential purpose "typically fails when evidence shows that the seller either refuses to repair or replace the goods or, despite attempting repair, the seller was not able to cure its breach."  *Id.*

Neither of those situations is present in the case *sub judice*.  IM obtained the remedy for which it bargained because Siemens fulfilled its warranty obligations under the Limitation of Liability.  And as discussed above, Siemens was neither unable nor unwilling to complete repairs.  Rather, Siemens expended the total cost of the contract price on repairs, thereby returning Unit I back to operation.  IM's allegation that the remedy failed its essential purpose is therefore unsuccessful.

### V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant Siemens' Motion to Dismiss Counts I and II of IM's complaint.

**IT IS SO ORDERED.**

                                         **s/ Algenon L. Marbley**
                                         **ALGENON L. MARBLEY**
                                         **UNITED STATES DISTRICT JUDGE**

**DATED: September 23, 2014**